# In the United States District Court for the Southern District of Georgia Brunswick Division

| | |
|---|---|
| TRACY D.L.C. SMITH and CANDACE A. SMITH, <br><br> Plaintiffs, <br><br> v. <br><br> GEORGE F. BARNHILL, <br><br> Defendant. | CV 2:20-116 |

## ORDER

Before the Court is Defendant George Barnhill's motion to dismiss, as amended. Dkt. Nos. 9, 10. The motion has been fully briefed and is ripe for review.

## BACKGROUND

This case involves criminal prosecutions stemming from a child custody dispute. For the purposes of ruling on Defendant's Motion to Dismiss, the Court takes Plaintiffs' version of the facts as true. Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1057 (11th Cir. 2007) ("[W]hen ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true.").

Plaintiff Pastor Tracy D.L.C. Smith and his wife Candace A. Smith ("Plaintiffs") served as missionaries in the Free Seventh

Day Adventist church. Dkt. No. 7 ¶ 6. During the relevant period, Plaintiffs resided in Arkansas and traveled the world as missionaries. Id. ¶ 11. On May 14, 2015, non-parties Allen Tucker and Anastasia Tucker (the "Tuckers") voluntarily contracted to Plaintiffs the legal custody of their minor daughter, AMT, under O.C.G.A. § 19-7-1(b)(1), a Georgia statute which addresses parental power. Id. ¶¶ 8, 9; Dkt. No. 7-1. The Tuckers also signed an Arkansas consent to Plaintiffs' guardianship of AMT, indicating their intent to give custody to Plaintiffs. Dkt. No. 7 ¶ 15.

On July 7, 2017, Mrs. Tucker met with Chris Hatcher, a Glynn County police officer. Id. ¶ 17. Mrs. Tucker reported to Officer Hatcher that she had given custody of AMT to Plaintiffs. Id. ¶ 18. Mrs. Tucker then untruthfully alleged that "she has attempted to get her daughter back but the Smiths have refused to bring the child back or give a location where the child is." Id. ¶ 22. Mrs. Tucker also "falsely claimed that the Smiths then fled to California." Id. ¶ 23 (quotation marks omitted). Believing no crime had occurred, Officer Hatcher took no further action on Mrs. Tucker's complaint. Id. ¶ 32.

Over one year later, Defendant Barnhill, an Assistant District Attorney for the Brunswick Judicial Circuit, subpoenaed Officer Hatcher to testify before the grand jury. Id. ¶¶ 7, 33. Plaintiffs allege that Defendant Barnhill disregarded Officer

Hatcher's opinion that Plaintiffs had not violated the law and directed Officer Hatcher to read his report[1] to the grand jury. Id. ¶¶ 35, 36. The grand jury indicted Plaintiffs on one count of interstate interference with custody under O.C.G.A. § 16-5-45(c), and the Glynn County Superior Court issued a bench warrant for Plaintiffs' arrest. Id. ¶¶ 39, 40.

Meanwhile, AMT's picture was posted in multiple Wal-Marts as a missing child. Id. ¶ 45. On October 4, 2018, Plaintiffs were arrested in Lewiston, Idaho. Id. ¶ 41. The Idaho court released Plaintiffs the day after their arrest; Defendant Barnhill allowed Plaintiffs to self-surrender at the Glynn County Detention Center by October 31, 2018. Id. ¶ 44. Plaintiffs self-surrendered on October 26, 2018, at which point they were arrested. Id. ¶¶ 48, 49. During this time, Ms. Andrea Browning of the Glynn County Department of Family and Children Services flew to Idaho to take custody of AMT. Id. ¶ 42. Plaintiffs allege that Defendant Barnhill falsely characterized the Arkansas guardianship papers as "fraudulent documents." Id. ¶ 50. On January 18, 2019, the Glynn County Superior Court granted Plaintiffs' special demurrer, ruling that the indictment did not state a violation of the law. Id. ¶ 55; Dkt. No 7-8. Around this time, according to the amended complaint, Defendant Barnhill attempted to intimidate Mrs. Smith,

---

[1] Though Plaintiffs do not specify, the Court assumes this "report" is from Officer Hatcher's interview with Mrs. Tucker when she first complained about Plaintiffs.

3

who was not in the presence of counsel, into testifying against Pastor Smith, but Mr. Barnhill was not successful. Id. ¶¶ 56-60.

After the dismissal of the first indictment, Defendant Barnhill subpoenaed Ms. Browning to testify before a second grand jury.[2] Id. ¶ 61. Ms. Browning told Defendant Barnhill that she knew nothing about the case other than that she transported AMT from Idaho to Brunswick. Id. ¶¶ 62, 63. According to the amended complaint, Defendant Barnhill advised Ms. Browning as to what she should tell the grand jury so that the grand jury would indict Plaintiffs once again. Id. ¶ 63. Plaintiffs allege Defendant Barnhill essentially provided Ms. Browning with a script to testify before the grand jury. Id. ¶ 65. Ms. Browning so testified, and the grand jury again indicted Plaintiffs on January 23, 2019. Id. ¶¶ 66, 67; Dkt. No 7-9. The same day, the superior court issued a second bench warrant for Plaintiffs' arrest, and Plaintiffs were arrested the following day. Dkt. No. 7 ¶¶ 70, 71. On June 14, 2019, at a motions hearing, the superior court dismissed the second indictment, ruling that "[b]ecause the conduct complained of does not constitute a violation of the [interference with custody]

---

[2] Plaintiffs attach to their response brief Ms. Browning's deposition taken in a related civil matter. Dkt. No. 15-3. The Court cannot consider deposition testimony on a motion to dismiss because the deposition transcript is a matter outside the pleadings and is not a public record. See, e.g., Sims v. Chase Home Fin., LLC, No. 4:11-cv-121-HLM, 2011 WL 13176725, at *1 n.1 (N.D. Ga. Aug. 30, 2011).

4

statute, Defendants' motion to dismiss is hereby GRANTED." Id. ¶ 72; Dkt. No. 7-11.

Plaintiffs timely filed this lawsuit against Defendant Barnhill. Dkt. No. 1. Defendant moved to dismiss, and Plaintiffs timely filed an amended complaint, the operative pleading. Dkt. Nos. 6, 7. Therein, Plaintiffs allege, through 42 U.S.C. § 1983, that Defendant Barnhill, in his individual capacity,[3] violated their rights under the Fourth (Counts I and II), Sixth (Count VIII), and Fourteenth Amendments (Counts III and IV).[4] Dkt. No. 7 at 15-22. Plaintiffs also assert a § 1983 malicious prosecution claim (Count IX-2)[5] against Defendant Barnhill. Next, Plaintiffs allege Defendant Barnhill engaged in a conspiracy to interfere with their civil rights in violation of 42 U.S.C. § 1985 (Count XIII). Finally, Plaintiffs assert—though not with particularity—what the Court assumes to be state law claims of "fabrication of evidence" (Count IX-1), "false statements" (Count X), "conspiracy to commit false arrest through false testimony before the grand jury" (Count XI), and "retaliatory prosecution" (Count XII) (collectively, the "state law claims"). Lastly, Plaintiffs seek compensatory and punitive damages, as well as attorney fees under

---

[3] Plaintiffs concede that they do not assert claims against Defendant Barnhill in his official capacity.
[4] Plaintiffs also alleged violation of their Fifth Amendment rights (Counts V and VI) but withdrew those counts in their response brief. See Dkt. No. 15 at 21.
[5] The amended complaint contains two "IX" counts, which the Court references as "IX-1" and "IX-2." Additionally, the amended complaint does not contain count "XII."

5

the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (Count XIV).  Defendant Barnhill moves to dismiss Plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b).  Dkt. No. 10-1 at 5-6.

**LEGAL AUTHORITY**

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In order to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

Importantly, while the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint.  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260

(11th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. The court need not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

Lastly, the Court notes that exhibits attached to pleadings become part of a pleading. Fed. R. Civ. P. 10(c). Consequently, a court may consider documents attached to a complaint as exhibits in resolving a motion to dismiss without converting the motion to one for summary judgment. Taylor v. Appleton, 30 F.3d 1365, 1368 n.3 (11th Cir. 1994).

## DISCUSSION

In his motion to dismiss, Defendant Barnhill primarily argues that he enjoys absolute prosecutorial immunity as assistant district attorney, which therefore precludes this lawsuit. See Dkt. No. 10-1. He is correct.

I.  **Plaintiffs' Federal Claims**

There are two types of immunity prosecutors may receive: absolute prosecutorial immunity and qualified immunity. Buckley v. Fitzsimmons, 509 U.S. 259, 268-69 (1993). The law affords prosecutors absolute immunity because qualified immunity protection alone "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." Imbler v.

7

Pachtman, 424 U.S. 409, 427-28 (1976).  The burden of showing that absolute immunity is justified falls on the official seeking the immunity.  Burns v. Reed, 500 U.S. 478, 486 (1991).

The doctrine of absolute prosecutorial immunity protects district attorneys and other prosecutors from civil suit for a range of functions they perform as state or federal advocates in criminal matters.  Kalina v. Fletcher, 522 U.S. 118, 124 (1997). "This immunity is derived from the absolute immunity afforded judges and grand jurors who, like prosecutors, are required to perform an integral function in our system of criminal justice." Nathan v. Lawton, No. 487-223, 1989 WL 11706, at *12 (S.D. Ga. 1989).  While the protection that the doctrine affords is a complete exemption from suit, prosecutorial immunity extends only to acts "intimately associated with the judicial phase of the criminal process."  Imbler, 424 U.S. at 430.  In other words, a prosecutor is protected for the actions he undertakes as an advocate for the state, but he enjoys no immunity for "those aspects of [his] responsibility that cast him in the role of an administrator or investigative officer."  Id. at 430; see also Buckley, 509 U.S. at 273 (stating that "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity").

In order to determine whether a prosecutor is entitled to absolute immunity, the Court must "examine 'the nature of the function performed, not the identity of the actor who performed it.'" Kalina, 522 U.S. at 127 (quoting Forrester v. White, 484 U.S. 219, 229 (1988)). Thus, "the protection of absolute immunity is contingent on the 'function' the prosecutors are performing and not their status as prosecutors." Mastroianni v. Bowers, 160 F.3d 671, 676 (11th Cir. 1998), opinion vacated on other grounds and superseded on reh'g, 173 F.3d 1363 (11th Cir. 1999). "Under the functional approach to absolute prosecutorial immunity, even a wrongful act of a prosecutor—such as participating in a conspiracy to manufacture evidence—while not properly an aspect of a prosecutor's duty, is immaterial." Neville v. Classic Gardens, 141 F. Supp. 2d 1377, 1381 (S.D. Ga. 2001) (citation omitted). "In other words, 'the immunity attaches to [the prosecutor's] function, not to the manner in which [s]he performed it. Accordingly, a prosecutor's motivation, and whether preferable alternatives to the actions taken were available, are irrelevant.'" Id. (quoting Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir. 2001)).

In analyzing the facts of this case, the Court looks to other courts' decisions delineating the boundaries of the doctrine. The United States Supreme Court has held that a state prosecutor was immune for "matters [that] involved the exercise of professional

9

judgment." Kalina, 522 U.S. at 130. Additionally, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley, 509 U.S. at 273. The Supreme Court has also held, however, that absolute immunity does not protect a prosecutor from suit arising from holding a press conference. Id. at 276–78. Courts have been unwilling to extend absolute immunity to prosecutors for giving legal advice to the police during their pretrial investigation, Burns, 500 U.S. at 492–96, or for participating in a police search and "entrapping someone," Mullinax v. McElhenney, 817 F.2d 711 (11th Cir. 1987). Generally speaking, prosecutors are not immune for their conduct prior to the judicial phase of the criminal process. Mastroianni, 160 F.3d at 676.

The Court finds illustrative cases which examine specific functions for which prosecutors have or have not received absolute immunity. For example, prosecutors are "absolutely immune from damages liability . . . for making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding), and also for eliciting false and defamatory testimony from witnesses." Burns, 500 U.S. at 489-90 (citing Yaselli v. Goff, 12 F.2d 396, 401–02 (2d Cir. 1926), summarily aff'd, 275 U.S. 503 (1927)); see also Peace v. Baker,

10

697 F. Supp. 1145, 1146, 1147 (D. Nev. 1988) (holding prosecutor entitled to absolute immunity for allegations that he supplied false information during the sentencing proceeding). Any malicious intent behind such statements does not strip a prosecutor of absolute protection. See Elder v. Athens-Clark Cty., 54 F.3d 694, 695-96 (11th Cir. 1995) (stating prosecutorial immunity extends to allegations "that the prosecutor filed charges in bad faith, or for evil motives, or as a conspirator"); see also Yeager v. Binford, No. 1:18-CV-526-WKW, 2019 WL 630296, at *3 (M.D. Ala. Feb. 14, 2019) ("[A]s with judicial immunity, allegations of malicious intent do not overcome a prosecutor's absolute immunity." (citation omitted)). Indeed, prosecutorial immunity extends to "filing an information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, . . . [and] threatening . . . further criminal prosecutions." Hart v. Hodges, 587 F.3d 1288, 1295 (11th Cir. 2009).

"To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest." Imbler, 424 U.S. at 427. Addressing this concern, United States Supreme Court quoted Judge Learned Hand, who wrote of the prosecutor's immunity from actions for

11

malicious prosecution: "As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." Id. at 428 (quoting Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949)).

### a. Plaintiffs' Section 1983 Claims

Now the Court must apply the law to the facts of this case. First, Plaintiffs assert that Defendant Barnhill violated their constitutional rights under the Fourth, Sixth, and Fourteenth Amendments. They bring these constitutional claims, including their malicious prosecution claim, pursuant to 42 U.S.C. § 1983, a statute generally meant to provide relief to victims of state actors who use their authoritative role to deprive individuals of their federally guaranteed rights.

In brief, Plaintiffs allege that Defendant:

1. subpoenaed Officer Hatcher to testify before the grand jury, dkt. no. 7 ¶ 33;

2. advised and directed Officer Hatcher to read his report to the grand jury, id. ¶ 36;

3. conspired with Officer Hatcher in Plaintiffs' baseless prosecution, id. ¶ 26;

4. worked with Officer Hatcher to "facilitate[] the false narrative" of Plaintiffs' illegal abduction of AMT, which led to AMT's photo being posted in multiple Wal-Marts, id. ¶ 45;

5. falsely characterized the Arkansas guardianship papers as fraudulent documents, id. ¶ 50;

6. interfered with Plaintiffs' family, id. ¶ 53;

7. interfered with Plaintiffs' right to counsel, id. ¶ 56;

8. arranged Plaintiffs' separate court appearances in an attempt to drive a wedge between Plaintiffs and to intimidate Mrs. Smith into testifying against Pastor Smith, id. ¶ 57;

9. knew the first indictment had no chance of success, id. ¶ 58;

10. did not have probable cause for the second indictment, id. ¶ 84;

11. subpoenaed Ms. Browning to testify before a second grand jury, id. ¶ 61;

12. advised and directed Ms. Browning what to tell the grand jury and provided her a script of same, id. ¶¶ 63, 65;

13. conspired with Officer Hatcher and Ms. Browning "to fabricate before any probable cause existed to arrest [Plaintiffs] or begin judicial proceedings against [Plaintiffs]," id. ¶ 102;

13

14. instituted a prosecution against Plaintiffs without probable cause, id. ¶ 105; and

15. retaliated against Plaintiffs by securing a second prosecution, id. ¶ 116.

The question now is whether Defendant's actions were made as advocate of the state entitling Defendant to absolute prosecutorial immunity. In short, the Court finds Defendant's actions were so made.

The conduct of which Plaintiffs complain begins with Defendant's subpoenaing Officer Hatcher to testify before the grand jury. A grand jury subpoena is one of the first steps a prosecutor, as an advocate for the state, takes to initiate a prosecution after evaluating evidence obtained by law enforcement. Buckley, 509 U.S. at 273 (stating that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings . . . , and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity," including "the professional evaluation of the evidence assembled by the police"). Plaintiffs make no allegation that Defendant took unconstitutional action before securing the subpoena, such as engaging in Officer Hatcher's investigation of Mrs. Tucker's complaint regarding Plaintiffs or otherwise acting as an investigator rather than an advocate.

That Defendant advised and directed Officer Hatcher to read his report to the grand jury is likewise within Defendant's role as advocate. Id. (preparation of evidence for presentation before a grand jury after a decision to seek an indictment has been made is entitled to the protections of absolute immunity). This is so even if the testimony presented was perjured. Hart, 587 F.3d at 1295. The same analysis applies to Defendant's alleged coordination of Ms. Browning's grand jury testimony. Moreover, that Defendant might not have had probable cause to bring the first or even second indictment is not material. Buckley, 509 U.S. at 274 (stating there is a "common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not").

Plaintiffs' remaining allegations regarding Defendant's conduct occurred after an indictment and arrest warrant had been issued: falsely characterizing the guardianship papers; interfering with Plaintiffs' right to counsel; and arranging separate court appearances in order to intimidate Plaintiffs. Defendant's actions were taken in his role as advocate. That Plaintiffs' arrest resulted in interference with their family is a natural result of a prosecution. Similarly, AMT's photo being posted in Wal-Marts is a result of the indictment and arrest warrant being issued. Plaintiffs make no allegation that Defendant was involved in the actual posting, only that such posting occurred

15

as a result of Defendant's securing the indictment and arrest. Finally, Defendant's seeking a second indictment, even if malicious and without probable cause, is entitled to absolute immunity. Id.

The Court concludes that absolute prosecutorial immunity bars Plaintiffs' section 1983 claims (Counts I, II, III, IV, VIII, and IX-2). Defendant's motion to dismiss is thus **GRANTED** as to those claims, and they are **DISMISSED with prejudice**.

### b. Plaintiffs' Section 1985 Claim

Plaintiffs contend that Defendant Barnhill's instructing Officer Hatcher and Ms. Browning to testify before the grand jury created a conspiracy to violate Plaintiffs' civil rights under 42 U.S.C. § 1985, a statute enacted to protect individuals' civil rights from conspirators' class- or race-based discriminatory animus or intent. See, e.g., Dkt. No. 7 ¶ 69; see also id. ¶ 112.

The Court of Appeals for the Eleventh Circuit has held that "the allegation that a challenged official act is part of a conspiracy does not in any manner dilute immunity." Elder, 54 F.3d at 695. In so holding, the Court of Appeals reasoned that if "calling a judge's allegedly wrong decision a conspiracy does not strip the judge of absolute immunity, calling a prosecutor's allegedly wrongful decision to prosecute a conspiracy does not strip the prosecutor of absolute immunity." Id. Here, Defendant Barnhill is immune for his actions in preparing Officer Hatcher

16

and Ms. Browning to testify in front of the grand jury; calling those acts a conspiracy does not dilute Defendant's immunity. Therefore, Defendant is entitled to absolute immunity for allegedly conspiring to violate Plaintiffs' constitutional rights. Defendant's motion to dismiss is thus **GRANTED** as to Plaintiffs' section 1985 claim (Count XIII), and it is **DISMISSED with prejudice**.

**II. Plaintiffs' State Law Claims**

Finding that Plaintiffs' federal claims against Defendant fail as a matter of law and must be dismissed, so too must Plaintiffs' state claims. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."). Moreover, even if the Court were to reach Plaintiffs' state law claims, the Court would dismiss them as being barred by Georgia's absolute prosecutorial immunity for the same reasons discussed *supra*. GA. CONST. art. VI, § VIII, ¶ I (e) ("District attorneys shall enjoy immunity from private suit for actions arising from the performance of their duties."); see also Holsey v. Hind, 377 S.E.2d 200, 201 (Ga. Ct. App. 1988) ("[A] prosecutor enjoys absolute immunity when engaging in quasi-judicial functions." (quoting Kadivar v. Stone, 804 F.2d 635, 637 (11th Cir. 1986))). Accordingly, Defendant's motion to dismiss is

17

**GRANTED** as to Plaintiffs' state law claims (Counts IX-1, X, XI and XII), and those claims are **DISMISSED without prejudice**.

### III. Plaintiffs' Request for Attorney's Fees

For their section 1983 and 1985 claims, Plaintiffs move for an award of attorney's fees under 42 U.S.C. § 1988. That statute allows the Court, in its discretion, to award a party who prevails in certain enforcement actions "a reasonable attorney's fee as part of the costs." § 1988(b). Here, however, Plaintiffs did not prevail on either their § 1983 or § 1985 claims. Accordingly, Plaintiffs are **DENIED** attorney's fees under § 1988(b) (Count XIV), as well as other compensatory and punitive damages.

## CONCLUSION

Defendant's motion to dismiss is **GRANTED** in its entirety. Absolute prosecutorial immunity bars Plaintiffs' claims brought pursuant to section 1983 (Counts I, II, III, IV, VIII, and IX-2) and section 1985 (Count XIII). Those federal claims are **DISMISSED with prejudice**. Because no federal claims remain, Plaintiffs' state law claims (Counts IX-1, X, XI, and XII) are **DISMISSED without prejudice**. Plaintiffs are **DENIED** attorney's fees under section 1988 (Count XIV). The Clerk is **DIRECTED** to enter judgment for Defendant and **CLOSE** this case.

**SO ORDERED**, this 8th day of February, 2021.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA